IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

VIRGINIA A. HALLER                                                    PLAINTIFF

v.                              Civil No. 11-2175

MICHAEL J.  ASTRUE, Commissioner
Social Security Administration                                       DEFENDANT

### MEMORANDUM OPINION

Plaintiff, Virginia Haller, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for a period of disability, disability insurance benefits ("DIB"), and supplement security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

The plaintiff filed her applications for DIB and SSI on November 14, 2008, alleging an onset date of February 8, 2008, due to chronic back and neck pain associated with degenerative disk/joint disease, scoliosis, anxiety disorder/panic attacks, dysthymia, chronic obstructive pulmonary disease ("COPD"), reactive airway disease, and headaches.  Tr. 116-119, 142-143, 150-155, 156-157, 158-165, 164, 166-173, 174-180, 184-185, 186-195, 196-203, 210, 216, 222.  The Commissioner denied Plaintiff's application initially and on reconsideration.  Tr. 70-71, 74-83.  An administrative hearing was held on April 22, 2010.  Tr. 27-69.  Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 49 years old and possessed a tenth grade education. Tr. 32.  Plaintiff testified that she was currently enrolled in GED classes.  Tr. 32-33.  She had past relevant work "(PRW)" experience as a certified nurse's aide and housekeeper.  Tr. 142-149, 168, 211, 221.

On December 3, 2010, the ALJ found plaintiff's degenerative disk/joint disease, anxiety disorder, dysthymia, and narcotics abuse to be severe, but concluded they did not meet or medically

equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr.12-15. After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform medium, unskilled work involving no more than incidental interaction with others consistent with the work performed. Tr. 15-19. With the assistance of a vocational expert, the ALJ found plaintiff could perform work as laundry worker and production worker/bench assembler. Tr. 20-21.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on September 1, 2011. Tr. 1-3. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 11, 12.

## II.    **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

AO72A
(Rev. 8/82)

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Evidence Presented:**

At the onset, we note that the transcript in this case is comprised of over 2100 pages, 1870 of which are actual medical records and span from approximately April 1993 until July 2010. Tr.  247-2117.[1]  Plaintiff alleges an onset date of February 8, 2008, due to a variety of symptoms including

---

[1]Given the length of the transcript, rather than go through each individual treatment note or emergency room record, the undersigned will summarize the records.  It should be noted, however, that the entire transcript was reviewed in preparation of this opinion.  And, we note that many of the medical records provided are duplicates.  Duplicate records have been placed in parenthesis.

chronic pain, anxiety disorder/panic attacks, dysthymia/depression, chronic obstructive pulmonary disease ("COPD"), reactive airway disease ("RAD")/asthma, and headaches. Records dated prior to relevant time period reveal Plaintiff has a history of treatment for right upper quadrant abdominal pain, gall stones, irritable bowel syndrome, gastric ulcers, sinus problems, chronic lower back pain, degenerative arthritis, neck pain (right trapezial muscular region), constipation, vision problems, hearing problems, mild anemia, kidney stones, chest pain, abdominal pain, urinary tract infections ("UTI's"), bronchitis, RAD, COPD with acute exacerbation, shortness of breath, rhinitis, anxiety disorder, dizziness caused by Albuterol, and controlled substance abuse. Tr. 247-295, 300-343, 351-392, 448-562, 775-780, 1497-1526, 1598-1625, 2067-2088. During this time, Plaintiff was prescribed a variety of treatment measures to include a laminectomy in 1992, a cholycystectomy, physical therapy, Ultram, Norflex, Naprosyn, Lorcet, Diazepam, Valium, Soma, Vicodin, Flexeril, and antibiotics. An x-ray of Plaintiff's lumbar spine conducted in February 2000 revealed degenerative disk changes at the L4-5 level. Tr. 1518. Further, x-rays of her chest in March 2006 revealed mild degenerative changes of the thoracolumbar spine junction region. Tr. 337.

During the relevant time period, Plaintiff had numerous hospital emergency room ("ER") and/or doctors' office visits (in excess of 120 for the two-year period from her alleged onset date through March 7, 2010), for various symptoms/complaints. Plaintiff complained of chronic pain to include back (30 plus visits), neck (17 visits), shoulder (5 visits), chest (13 visits), and abdominal pain (15 visits), as well as headaches (7 visits), and was diagnosed with a variety of ailments including chronic pain, strain, pelvic inflammatory disease, mild suprapubic pain, mild epigastric pain, biliary colic (gallstones), dyspepsia, gastroesophageal reflux ("GERD"), questionable bursitis, and a laceration restricting the range of motion in her left shoulder. Tr. 620-622, 623-640 (1301-1303), 647-653 (1286-1293), 661-663 (1277-1280), 664-665 (1275-1276), 695-698(1240-1245), 699-700, 704-709 (1231-1232), 725-727 (1216-1219), 728-730 (1213-1215), 737-739 (1157-1171, 1204-1206), 740-745 (1139-1156, 1198-1203),

4

770-773 (1576-1580), 782-787, 787-790 (1581-1585), 792-797 (1586-1592), 799-802 (1565-1569), 813-817 (1570-1575), 850-866 (1396-1402), 954-972 (1458-1462), 1026-1090 (1482-1484), 1040-1055 (1471-1473), 1091-1113 (1485-1491), 1056-1061 (1474-1478), 1126-1138 (1114-1123), 1308, 1321, 1335-1339, 1347-1349, 1382-1384, 1385-1388, 1593-1597, 1754-1779, 1801-1810, 1811, 1812-1817, 1818-1824, 1824-1829, 1857-1871, 1928-1933, 1934-1943, 1944-1950, 1951-1959, 1979-1985, 1986-1999, 2015-2026, 2021-2026, 2027-2032, 2033-2038, 2090-2091, 2092, 2094-2095, 2096-2097, 2098-2099, 2100-2101, 2102-2103, 2104, 2106-2107, 2108-2110. On June 6, 2008, x-rays of her lumbar spine revealed mild degenerative changes. Tr. 344. In July 2008, Plaintiff injured her back while moving furniture. Tr. 2033-2038. Further, in August 2008, she was involved in a motor vehicle accident following which she complained of neck and left shoulder pain. She was ultimately treated for whiplash. Tr. 704-707 (1233-1236). X-rays showed arthritic change in the cervical spine with osteophyte formation or calcification of the spinous ligament at the lower cervical level and a probable accessory ossicle superolateral to the left humerus. Tr. 704-707, 1233-1236. Plaintiff reported that her headaches also began about this time. However, a CT scan of her brain and sinuses conducted in September 2008 was negative. Tr. 792-797 (1586-1572). On September 24, 2008, x-rays of her lumbar spine revealed lumbar disk space narrowing at the level of the disk between the fourth and fifth lumbar vertebrae. Tr. 813-817, 1570-1575.

In February 2009, Plaintiff injured her back when she slipped in the bathroom while cleaning. Tr. 954-97. Later in the month, she injured it again, carrying groceries. Tr. 1321. Then, in May 2009, Plaintiff was involved in a second automobile accident and suffered neck pain, a broken toe, and a concussion without a loss of consciousness. Tr. 1385-1388. X-rays were negative. And, a CT scan of her brain revealed only a right frontal scalp hematoma. Tr. 1951-1959.

Physical exams failed to document significant limitations, revealing only mild to moderate tenderness and/or a slight decrease in range of motion. Tr. 623-640 (1301-1303), 643-646 (1294-1298),

5

689-691 (1246-1251), 695-698 (1240-1245), 699-700, 710 (715, 1230), 728-730, 737-739 (1157-1171, 1204-1206), 787-790,  799-802 (1565-1569), 954-972 (1458-1462)1040-1055(1471-1473), 1124-1125 (1492-1493), 1308, 1347-1349, 1715-1734, 1736-1753, 2027-2032 (1581-1858), 2033-2038. In fact, the majority of the records indicate that Plaintiff's level of functional limitation was merely mild.  Tr. 661-663 (1277-1280), 704-707 (1233-1236), 737-739 (1157-1171, 1204-1206). *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider).  And, the treatment measures prescribed were conservative in nature, including prescription pain medications. *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain).  There is no indication that Plaintiff was a candidate for further surgical correction.  Interestingly, a few ER doctors even diagnosed her with malingering and drug seeking behavior, making a note of her frequent visits to the emergency room for complaints of pain and requests for medication.  Tr. 787-790 (1581-1585), 1557, 1928-1933.

Ultimately, Plaintiff established care with Dr. Danny Silver who repeatedly diagnosed her with chronic lower back pain and acute cervical and thoracic myofascial strain and prescribed her Lorcet.[2] His examination revealed some moderate tenderness, but no significant limitations.  On August 6, 2009, he completed a medical source statement indicating that he had reviewed Plaintiff's medical records from 2008-2009, and that she had been diagnosed with low back pain, left shoulder myofascial strain, and acute cervical and thoracic myofascial strain.  Tr. 1190-1192.  Dr. Silver opined that Plaintiff could sit for a total of 3 hours per day and stand and walk for a total of 2 hours each per day.  Further, he indicated that Plaintiff could occasionally lift and carry up to 10 pounds, but never lift more than 10 pounds.  Dr. Silver also concluded Plaintiff could occasionally bend and reach above her head, be exposed to marked

---

[2]However, Plaintiff continued to seek ER treatment with complaints of pain and receive prescriptions for pain medication, in addition to the medication prescribed by Dr. Silver.

AO72A
(Rev. 8/82)

temperature changes, and be exposed to noise; never squat, crawl, climb, stoop, crouch, kneel, be exposed to unprotected heights, work around moving machinery, drive automotive equipment, or be exposed to dust, fumes, and gases. Dr. Silver indicated that x-rays, joint deformity, and muscle spasms were objective signs of Plaintiff's pain. He rated her pain as severe, and stated that she would need frequent unscheduled breaks due to pain and anxiety, would to elevate her feet periodically, and would likely miss more than four days of work per month due to her symptoms. Dr. Silver stated that she had a long history of back pain, bursitis, anxiety, and depression, and that he had discussed her history with colleagues that had been treating Plaintiff for approximately 15 years, but failed to identify to whom he was referring and failed to mention her history of drug abuse. Tr. 1190-1192, 1194-1197. However, in reviewing Dr. Silver's treatment notes dated between April 22, 2009, and January 27, 2010, we note that these records indicate that Plaintiff actually reported gradual improvement in her pain and stated that the medications helped controlled her pain. Tr. 2098-2099, 2100-2101, 2102-2103. *Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling).

In addition to her chronic pain, Plaintiff also received frequent antibiotic treatment for chronic UTI's and dysuria. Tr. 393-396, 397-413, 414-420, 425-430, 442-443, 716-718 (1224-1227), 721-724, 740-745 (1139-1156, 1198-1203), 819-825 (1547-1554), 1220-1223, 1376-1381, 1530-1532, 1780-1800, 1992-1997, 2021-2026, 2054-2060. Records also document a history of asthma/reactive airway disease and COPD. Plaintiff sought fairly frequent treatment for chest pain and symptoms associated with bronchitis and sinusitis.[3] Tr. 563-573, 574-597, 641-642 (1299-1300), 1017-1028 (1440-1441), 1062-1075 (1479-1481), 1657-1714, 1812-1817, 1967-1978, 2000-2005. In March 2009, a chest x-ray revealed a stable pulmonary nodule in the right upper lobe. Tr. 935-958, 1420-1427. Repeat x-rays in

---

[3]She also suffered from allergies and sought treatment for allergic reactions to chemicals, perfume, and Flagyl. Tr. 1674-1693, 1736-1753, 1818-1824, 1851-1856, 1911-1921.

7

August 20, 2009, revealed very mild pulmonary vascular congestive change with no other significant abnormality seen. Tr. 1911-1921. And, occasional exams revealed wheezing. However, a stress and resting myocardial perfusion scan performed in August 2009 showed normal wall motion with a normal ejection fraction of 83% and no definite evidence of ischemia or infarct. Tr. 1911-1921. On August 27, 2009, pulmonary function testings also revealed normal lung function. Tr. 1887-1889.

From a mental perspective, Plaintiff complained of symptoms associated with anxiety and depression. In 2007, her husband died of a drug overdose. On several occasions thereafter, Plaintiff sought treatment for a medication overdose and/or taking her medication doses too close together. Tr. 656 (1280-1285), 2039-2047, 1701-1703, 1873-1877. She was also treated for anxiety, panic attacks, and hysteria. Tr. 655-660, 701-703, 731-733 (1210-1212), 827-837 (1533-1546), 886-905 (1409-1415), 906-920 (1455-1457), 921-934 (1416-1419), 996-1011 (1463-1465), 1114-1123, 1124-1125 (1492-1493), 1873-1877, 1960-1966, 2090-2091, 2092, 2094-2095, 2098-2099. However, Plaintiff reported no history of formal mental health treatment, and the majority of her examinations revealed no psychiatric issues. Tr. 445-447, 615-618, 699-700, 704-707 (1233-1234), 728-730 (1213-1215), 906-920, 935-938 (1420-1427), 1593-1597. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment). Plaintiff also failed to seek drug rehabilitation, although it was recommended on at least one occasion in January 2009. Tr. 1062-1075 (1479-1481).

On July 7, 2010, Plaintiff underwent a mental status exam and evaluation of personality functioning with Dr. Patricia Walz. Tr. 2111-2117. Plaintiff indicated that she had applied for disability due to residual back pain secondary to back surgery in the 1990s, COPD, and depression. She denied suicidal and homicidal ideations, but acknowledged problems with panic attacks and a history of molestation by her brothers. No history of formal mental health treatment was reported. Plaintiff

8

dropped out of school in the tenth grade, being rebellious, and indicated that she was sent to a school for handicapped people due to a learning disorder from grades seven through nine.  At the time of her evaluation, she had undergone pretesting for GED classes, but was waiting for a class schedule.

Dr. Walz noted that Plaintiff was cooperative, her mood glum, affect flat, speech clear and intelligible, thought processes logical and goal oriented, thought content not unusual or bizarre, and cognition within normal limits.  She concluded Plaintiff's intellectual functioning was estimated to be in the low average range with a probable learning disorder in arithmetic.  Dr. Walz diagnosed Plaintiff with panic disorder with agoraphobia, dysthymia, and probable learning disorder in arithmetic.  She assessed Plaintiff with a global assessment of functioning score between 35 and 40.  Dr. Walz concluded that Plaintiff's social skills were notable for significant anxiety, her attention and concentration were impaired, her speed of processing was average, and her persistence was normal.  She found no evidence of exaggeration or malingering, and recommended intellectual and achievement testing if further information was necessary.  Tr. 2111-2117.

**IV.    Discussion:**

Plaintiff contends that the ALJ erred in concluding that her subjective complaints were not credible, concluding that Plaintiff could perform a range of medium work discounting the RFC assessment of Plaintiff's treating physician, Dr. Danny Silver;; and, relying upon the flawed testimony of the vocational expert ("VE") who failed to identify jobs in the state or region where Plaintiff resided.

**A.    Subjective Complaints:**

An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.  *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints:  (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and

AO72A
(Rev. 8/82)

aggravating factors; and (5) functional restrictions. *See id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir.2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* Even so, the ALJ may discount a claimant's subjective complaints if there are inconsistencies between the alleged impairments and the evidence as a whole. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

In the present case, Plaintiff's treating sources diagnosed her with chronic low back pain and acute cervical and thoracic myofascial strain. Tr. 2091, 2093, 2095, 2097, 2101. X-rays did reveal some degenerative changes and disk space narrowing. However, she told Dr. Silver that the pain medications controlled her daily pain and that her back and neck pain was actually improving. Tr. 1204-1205, 2098-2099, 2100-2101, 2102-2103. *See Charles v. Barnhart*, 375 F.3d 777, 784 (8th Cir. 2004) (Physician's functional assessment inconsistent with lack of restrictions in medical records and indications that Plaintiff's condition mostly controlled with medication and some restriction of her daily activities). Further, treatment notes indicate that Plaintiff had mild functional limitations and  physical exams conducted by both ER doctors and Dr. Silver yielded only minimal findings. Tr. 1199, 1204-1205. Generally speaking, she exhibited a normal range of motion in her back and extremities (with the exception of a few occasions), her strength and reflexes were normal, and all neurological exams revealed no deficits. *See Forte*, 377 F.3d at 895. A stress test and pulmonary function studies were also within normal limits.

In addition, we note that Plaintiff received only conservative treatment in the ER for her alleged impairments and was released home relatively quickly. *See Smith*, 987 F.2d at 1374. The objective medical evidence also shows that Plaintiff frequently sought out pain medication. *See Anderson v.*

AO72A
(Rev. 8/82)

*Shalala*, 51 F.3d 777, 780 (8th Cir. 1995) (drug-seeking behavior discredits allegations of disabling pain). In 2007, Dr. Van Hoang refused to continue prescribing controlled substances to Plaintiff because the police informed him that her prescription was in the possession of a drug abuser. Tr. 17, 1607, 1611-1612. Records also reveal that Plaintiff was taking a greater dosage of medication than was prescribed by Dr. Silver, in that she presented in the emergency room between her visits with Dr. Silver, stating that she was out of medication.       Her behavior also discounts her subjective complaints in that she left the ER without being seen on numerous occasions, after triage determined her condition required less than emergent services. Tr. 397-413, 414-420, 425-430, 431-438, 563-573, 647-653, 839-846, 867-872, 987-994, 1012-1016, 1056-1061, 1350-1364, 1365-1375, 1922-1927, 1960-1966, 2015-2021. Further, on at least two occasions, emergency room doctors noted that Plaintiff was a known drug seeker. Tr. 787-790, 1581-1585, 1928-1933. An emergency room record dated June 6, 2009, reported nine emergency room visits between January and June 2009. Tr. 1929. And, one doctor even went so far as to diagnose her with malingering. Tr. 1557.

The ALJ also relied on Plaintiff's inconsistent statements regarding her daily activities in discounting her credibility. Plaintiff testified that her daughter stayed with her and does the shopping, laundry, and household chores. Tr. 55. However, on May 8, 2009, Plaintiff's daughter completed an Adult Function Report on Plaintiff's behalf, indicating that Plaintiff was residing in her home. Tr. 186-195. She also stated that Plaintiff could care for her personal hygiene, do laundry, iron, make her bed, go outside several times per day, ride in a car, go out alone, shop for groceries in the store, pay bills, count change, handle a savings account, use a checkbook/money orders, read Bible, read library books, attend church, watch television, call family and friends, and attend doctor appointments. Tr. 186-195. On, May 8, 2009, Plaintiff completed her own Adult Function Report, acknowledging her ability to care for her own personal hygiene, prepare simple meals when necessary, make the bed, iron, do the laundry, ride in a car, go out alone, shop for groceries in stores, pay bills, count change, handle a savings account,

use a checkbook/money orders, read the Bible, attend church, and watch television.  In fact, she

reportedly attended church 4-5 times per week.  *See Leckenby v. Astrue*, 287 F.3d 626, 634 (8th Cir.

2007) (In evaluating RFC, consideration should be given to the quality of daily activities, the ability to

sustain activities, and the frequency, appropriateness, and independence of activities).  There is no

evidence to indicate that Plaintiff's condition worsened between the time that function reports were

completed and the date of the administrative hearing.

In addition, Plaintiff provided inconsistent information regarding her criminal history, telling

the examiner who helped her complete her application that she had no criminal history.  However, when

confronted with a previous application indicating that she did, indeed, have a criminal history, she

admitted to going to prison in March 2006 because her husband stole his grandmother's checkbook.  Tr.

140.  Plaintiff said she was trying to "forget" about it.

After reviewing the entire transcript in this case, the undersigned finds that the ALJ properly

assessed Plaintiff's credibility.  *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)(questions of

credibility are for the ALJ in the first instance – if an ALJ explicitly discredits a claimant's testimony

and gives good reason for doing so, court will normally defer to that judgment).  The lack of objective

evidence to support her allegations, coupled with her drug-seeking behavior and the inconsistencies in

her statements call her subjective complaints into question.  Further, while do not doubt that Plaintiff

suffers from some degree of pain, we note that the standard of evaluation is not whether plaintiff

experiences pain, but whether that pain is intense enough to cause functional limitations.  *Gowell v.

Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that the real issue is not whether the plaintiff is

experiencing pain, but how severe and whether it prevents him from performing any kind of work).  We

simply do not believe that evidence of record supports Plaintiff's allegations of disabling pain.

AO72A
(Rev. 8/82)

### B.    The ALJ's RFC Assessment:

We next examine the ALJ's RFC assessment.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or his RFC.  *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or his limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

The ALJ properly considered plaintiff's subjective complaints, the objective medical evidence, and the RFC assessments of the non-examining, consultative doctor.  On January 20, 2009, Dr. Jerry Thomas completed a physical RFC assessment after reviewing Plaintiff's medical records.  Tr. 748-749.  He concluded that her impairment was non-severe.  Tr. 748-749.  This assessment was affirmed by Dr. Bill Payne on July 15, 2009.  Tr. 1188.

On March 18, 2009, Dr. Brad Williams completed a psychiatric review technique form.  After reviewing her medical records, he found the evidence to be insufficient.  Tr. 754-767.  He noted that, in an effort to develop the mental evidence, Plaintiff was scheduled for a mental evaluation.  However, she did not show up for the appointment and failed to respond to a close out letter.  Therefore, there was insufficient evidence to rate her case.  Tr. 7754-767.

13

After reviewing the evidence of record, the undersigned finds that substantial evidence supports the ALJ's determination that she retained the residual functional capacity ("RFC") to perform medium, unskilled work involving no more than incidental interaction with others consistent with the work performed.  Records indicate that Plaintiff exhibited drug seeking behavior, no objective evidence substantiates Plaintiff's complaints of disabling pain, the medical evidence of record reveals mild and occasional moderate functional limitations, and Plaintiff's own reported activities suggest she is at the very least capable of performing medium level work.  Although Plaintiff contends that pain renders her incapable of returning to work, medical records document that she was able to clean the bathroom, move furniture, carry groceries, and climb stairs.  Tr. 710 (715, 1230), 954-971, 1321.  And, aside from Dr. Silver's medical source statement, we can find no evidence to indicate that Plaintiff suffered from a physical impairment that permanently restricted her functional abilities.[4]

From a mental perspective, Plaintiff sought out no formal mental health treatment and required no hospitalization during the relevant time period.  Instead, her primary care physician and ER doctors prescribed her anti-depressants and anti-anxiety medications to treat her symptoms.  Further, Plaintiff reported that she gets along well with authority figures and handles changes in routine "okay."  Tr. 196-203.  In fact, she testified that she was enrolled in a GED class, awaiting notification of a start date.

Although Dr. Walz concluded that Plaintiff's social skills were notable for significant anxiety, her attention and concentration were impaired, her speed of processing average, and her persistence normal, we note that this was following a one-time consultation.  Tr. 2111-2117.  And, it does not appear that Plaintiff reported her controlled substance abuse to Dr. Walz or that she considered it in her assessment. Further, as noted above, Plaintiff's own behaviors, namely her ability to grocery shop alone, attend church several times per week, get along well with authority figures and handle work stress are

---

[4]We do, however, note that Plaintiff's activities were restricted for a limited time following several of her injuries.  Tr. 886-905, 1593-1597.

14

inconsistent with Dr. Walz's conclusions.   Therefore, while we do agree that Plaintiff suffers from a mental impairment that likely impacts her social skills and abilities, we find substantial evidence to indicate that Plaintiff is capable of  performing unskilled work involving no more than incidental interaction with others consistent with the work performed.

### C.        Evaluation of Medical Source Statement:

Plaintiff also contends that the ALJ failed to assign  Dr. Silver's medical source statement significant weight, as the assessment of a treating doctor is generally entitled.  A treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2).  These opinions are not automatically controlling, however, because the record must be evaluated as a whole. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).  We will uphold an ALJ's decision to discount or even disregard the opinion of a treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id*. at 920-21 (internal quotations omitted).

The regulations explain that when a treating physician's opinion is not given controlling weight, as occurred in this case, the ALJ will *apply* the criteria of section 416.927(d)(2), but the regulations do not require that the ALJ specifically include a detailed explanation of his consideration of those factors in his decision.  Instead, section 416.927(d)(2) requires only that the ALJ give "good reasons" for the weight given to the physician's opinion.  20 C.F.R. § 416.927(d)(2).

Although not spelled out in the section where he discussed Dr. Silver's opinion, the ALJ notes, as do we, that Dr. Silver's assessment is the only document contained in the record that indicates Plaintiff's abilities were so limited.  This is interesting, because Dr. Silver's own physical exams revealed only moderate tenderness.  And, he made notations to indicate that Plaintiff's pain was

15

improving and that the pain medication was effective. Further, numerous examinations by various ER doctors revealed only occasional mild tenderness and slight range of motion deficits. A large number of examinations even produced no evidence of tenderness, range of motion deficits, motor strength weakness, or neurological limitations.

The ALJ also states that Dr. Silver's assessment is called into question due to the fact that Plaintiff testified that she owed him $800.00. Further, he states that Dr. Walz claims to have discussed her case with his colleagues, who had allegedly been treating Plaintiff for 15 years, yet he makes no mention of her controlled substance abuse. We, too, find it interesting that an investigation into Plaintiff's medical history would not have yielded at least one statement from a doctor questioning Plaintiff's motives for seeking frequent ER treatment. It seems clear in the record that Plaintiff's motives for treatment were questioned by several doctors. However, he makes no mention of this in his assessment.

Thus, given that Dr. Silver's assessment is not supported by the remaining evidence of record and fails to take into account Plaintiff's drug seeking behavior, we find no error in the ALJ's failure to assign his opinion controlling weight. 20 C.F.R. § 404.1527(d)(2) (treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record").

### D.    Vocational Expert's Testimony:

Testimony from a vocational expert based on a properly-phrased hypothetical question constitutes substantial evidence. *See Cruze v. Chater,* 85 F.3d 1320, 1323 (8th Cir. 1996); *cf. Hinchey v. Shalala,* 29 F.3d 428, 432 (8th Cir. 1994) (when hypothetical question does not encompass all relevant impairments, VE's testimony does not constitute substantial evidence to support the ALJ's decision). The ALJ's hypothetical question needs to "include only those impairments that the ALJ finds are

16

substantially supported by the record as a whole." *Id.* (citing *Stout v. Shalala,* 988 F.2d 853, 855 (8th Cir.1993)); *see also Morse v. Shalala,* 32 F.3d 1228, 1230 (8th Cir.1994).

The vocational expert indicated that a person of plaintiff's age, education, and work background with the above RFC, could still perform work as laundry worker and production worker (bench assembler).  Tr. 232-235.

Plaintiff argues that the VE testimony is flawed because he did not identify available jobs in the state or the region where Plaintiff resided.  The VE only identified jobs in the national economy. Plaintiff points out that Social Security Ruling 85-15 states in pertinent parts that whenever vocational resources are used and the decision is adverse to the claimant, the decision will include: (1) citations of examples of occupations/jobs that the person can do functionally and vocationally, and (2) a statement of the incidents of such work in the region in which the individual resides or in several regions of the country.

At the administrative hearing, the VE testified that the region to which he would be referring was the state of Arkansas.  Tr. 66.  However, in the interrogatories posed by the ALJ, the expert was merely asked to identify the number of jobs available in the national economy.  Contrary to Plaintiff's argument, we note that the expert is only required to state his opinion as to the number of jobs available in the national economy to a person with Plaintiff's residual function capacity, age, work experience, and education.  *Whitehouse v. Sullivan*, 949 F.1005, (8th Cir. 1991); 42 U.S.C.A. §§ 423(d)(1)(A), § 1382c(a)(3)(A) ("An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  It appears that the expert

17

properly considered Arkansas when determining the number of jobs that would exist in the national economy. Therefore, we find substantial evidence supports that ALJ's determination in this case.

IV.     **Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 16th day of July 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)